Max T. Williams, ISB #11015
WILLIAMS LAW GROUP, PLLC
417 S. 13th Street
Boise, ID 83702
Telephone: (208) 917-1608
Facsimile: (208) 269-3106
info@williamslawgroupboise.com

*Attorney for Plaintiffs*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROSS O'KANE AGUIRRE and MICHAEL DAVID AGUIRRE, individually, as parents, and as personal representatives of the ESTATE OF M.A., deceased, and on behalf of minor sibling, H.A.; NOAH LOUIS AGUIRRE, individually; CHLOE LYN O'KANE AGUIRRE, individually; and LILY ABIGAIL O'KANE AGUIRRE, individually<br><br>    Plaintiffs,<br><br>  vs.<br><br>WEST ADA SCHOOL DISTRICT; DR. DEREK BUB, individually; AND BRIAN MURPHY, individually; and DOES 1–50,<br><br>    Defendants. | Case No.<br><br>**PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW, Plaintiff, Ross O'Kane Aguirre and Michael David Aguirre, individually,

and as parents, and as personal representatives of the Estate of M.A., deceased, and on behalf of

minor sibling, H.A., Noah Louis Aguirre, Chloe Lyn O'Kane Aguirre, and Lily Abigail O'Kane

Aguirre (hereinafter "Plaintiffs"), by and through their attorney of record, Max T. Williams, of

Williams Law Group, PLLC, and for their Complaint against Defendants the West Ada School

District (hereinafter "WASD"), Superintendent Dr. Derek Bub (hereinafter "Dr. Bub"), and Brian

**PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL**          Page **1** of **14**

Murphy (hereinafter "Murphy"), (collectively, "Defendants"). Defendants' actions and/or omissions foreseeably caused the death of M.A., a disabled student denied legally required accommodations, resulting in severe emotional distress and suicide. Plaintiffs state and allege as follows:

<strong><u>JURISDICTION AND VENUE</u></strong>

1.      This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under:

    a.   42 U.S.C. § 1983,

    b.   The Fourteenth Amendment,

    c.   The Americans with Disabilities Act ("ADA"),

    d.   Section 504 of the Rehabilitation Act, and

    e.   The Individuals with Disabilities Education Act.

2.      The Court has supplemental jurisdiction over related state law claims under 28 U.S.C. § 1367.

3.      Venue is proper in the District of Idaho because the acts or omissions giving rise to these claims occurred in Ada County, Idaho.

4.      Plaintiffs timely presented a Notice of Tort Claim in compliance with Idaho Code § 6-906, or alternatively plead tolling and constitutional challenges as set forth herein.

5.      The amount in controversy will exceed the jurisdictional amount.

<strong><u>PARTIES</u></strong>

6.      Plaintiffs Ross O'Kane Aguirre and Michael David Aguirre are the parents of M.A. and personal representatives of his Estate who reside in Ada County, Idaho.

7.      H.A. is the minor sibling of M.A. residing with the above-named Plaintiffs in Ada County, Idaho.

**PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL**          Page **2** of **14**

8.      Noah Louis Aguirre is the adult sibling of M.A. who resides in Ada County, Idaho.

9.      Chloe Lyn O'Kane Aguirre is the adult sibling of M.A. who resides in Ada County, Idaho.

10.     Lily Abigail O'Kane Aguirre is the adult sibling of M.A. who resides in Ada County, Idaho

11.     WASD is a public school district responsible for the operation of Meridian High School.

12.     Dr. Bub was, at all relevant times, Superintendent of WASD and was responsible for oversight, training, and responses to complaints involving student safety and disability accommodations.

13.     Murphy was, at the time of the alleged incidents described herein, a teacher and/or employee at Meridian High School and directly interacted with M.A. Upon information and belief, Murphy is now the Principal of Meridian High School.

14.     Dr. Bub and Murphy are sued in their individual capacities and WASD as a public entity.

## **INTRODUCTION**

15.     This is an action for damages, declaratory relief, and injunctive relief arising from Defendants' violations of federal disability law, constitutional protections, and state law, resulting in the wrongful death of M.A.

16.     M.A. was a student with autism and ADHD who relied on accommodations required under an Individualized Education Program ("IEP") to safely access his education.

17.     Rather than accommodating M.A.'s disabilities, Defendants repeatedly subjected him to discipline, escalation, and confrontation for conduct directly related to his disability.

**PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL**          Page **3** of **14**

18.     Murphy's actions created a hostile and unsafe educational environment that caused M.A. increasing emotional distress, withdrawal, and fear of school.

19.     WASD and Dr. Bub, with knowledge of Murphy's conduct, failed to protect M.A. or otherwise prevent a hostile and unsafe educational environment that caused M.A. increasing emotional distress, withdrawal, and fear of school.

20.     This pattern of conduct culminated in M.A.'s suicide in October 2023.

21.     Plaintiffs bring this action both to obtain justice for M.A. and to secure policy changes to prevent similar harm to other vulnerable students, amongst other relief.

## FACTS AND GENERAL ALLEGATIONS

### A. M.A.'s Disabilities and Individual Education Plan

22.     M.A. was a student diagnosed with autism and ADHD.

23.     M.A. required consistent sensory accommodations to regulate his environment, including wearing items such as hoodies and beanies.

24.     These accommodations were documented in his Individual Education Plan ("IEP") and known to school staff.

### B. Hostile Treatment and Harassment

25.     Despite these accommodations, M.A. was repeatedly targeted and disciplined for wearing items required for his disability.

26.     M.A. felt harassed by school staff, including Murphy, for wearing his beanie and hoodie.

27.     Rather than recognizing these items as accommodations, Defendants treated them as rule violations.

28. This treatment caused M.A. increasing anxiety and distress related to attending school.

### C. November 2022 Incident

29. In November 2022, Murphy confronted M.A. in a school hallway regarding his beanie.

30. M.A. was calm and compliant.

31. The beanie was permitted under his IEP.

32. Murphy escalated the situation by raising his voice and physically entering M.A.'s personal space.

33. M.A. repeatedly asked Murphy to step back.

34. Murphy refused to de-escalate.

35. M.A.'s mother witnessed the incident in real time via FaceTime.

36. No staff intervened to protect M.A.

37. M.A. was subsequently disciplined and suspended.

38. This discipline directly contradicted his IEP accommodations.

### D. Notice to the WASD

39. Following the incident, Plaintiffs notified school administration, and specifically Dr. Bub.

40. Plaintiffs specifically reported:

   a. The escalation,

   b. The failure to honor the IEP, and

   c. The emotional impact on M.A.

41. Despite this notice, Defendants failed to:

**PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL**          Page **5** of **14**

    a.   Investigate meaningfully,

    b.   Correct the disciplinary action,

    c.   Provide staff training, or

    d.   Prevent future incidents.

42.    This failure constituted deliberate indifference.

### E. Ongoing Harm

43.    Following the November 2022 incident, M.A. became increasingly withdrawn.

44.    M.A. expressed distress about returning to school.

45.    Defendants continued to discipline rather than accommodate him.

46.    Defendants knew or should have known that such treatment posed a serious risk to a student with M.A.'s disabilities.

### F. Events Leading to Death

47.    In or about October 2023, M.A. returned home from school visibly distressed.

48.    M.A. reported that he had been written up again at school.

49.    This reinforced M.A.'s belief that he was being unfairly targeted.

50.    M.A. went into his parent's bedroom and died from a self-inflicted gunshot wound.

51.    After M.A.'s death, Plaintiffs requested information about the incident.

52.    Defendants reported that no record existed of disciplinary action that day.

53.    Defendants' failure to maintain or disclose records further obscured the circumstances of M.A.'s final hours.

### G. Causation

54.    Defendants, individually and collectively, created a pattern of escalating harm through:

a.  Failure to accommodate,

b.  Repeated discipline,

c.  Public confrontation, and

d.  Disregard of known vulnerabilities.

55.  M.A. was particularly vulnerable due to his disabilities.

56.  Defendants knew or should have known that their conduct created a high risk of severe emotional harm.

57.  Defendants' actions were a substantial factor in M.A.'s psychological deterioration and, ultimately, his death.

58.  M.A.'s suicide was a foreseeable and direct result of Defendants' actions and omissions.

## H.  Idaho Notice of Tort Claim Act, Accrual, and Tolling

59.  Plaintiffs provided notice under the Idaho Tort Claims Act.

60.  To the extent Defendants assert noncompliance with Idaho Code § 6-906, Plaintiffs allege:

a.  The claims did not fully accrue until the nature, extent, and cause of M.A.'s injuries and death were reasonably discoverable.

b.  Defendants' failure to maintain or disclose records delayed discovery of critical facts.

c.  The claims of minor beneficiaries are tolled and/or did not ripen until the age of majority.

d.  Strict application of the 180-day notice requirement under these circumstances violates due process and access to courts.

e.  Plaintiffs assert that Idaho Code § 6-906 is unconstitutional as applied to minor beneficiaries and wrongful death claims in this case.

f.  These allegations are pled in the alternative and for purposes of preserving all appellate issues.

61.  Wherefore, the Plaintiffs allege the following claims against Defendants:

<u>**COUNT I**</u>
**Violation of the Americans with Disabilities Act**
**(42 U.S.C. § 12132)**
**(Against WASD)**

62.  Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

63.  M.A. was a qualified individual with a disability, including autism and ADHD.

64.  WASD is a public entity subject to the ADA.

65.  M.A. was entitled to reasonable accommodations necessary to access public education, including sensory accommodations documented in his IEP.

66.  WASD denied M.A. the benefits of public education and subjected him to discrimination by:

a.  Failing to honor his IEP accommodations;

b.  Treating disability-related behavior as misconduct;

c.  Subjecting him to discipline for wearing sensory-regulation items; and

d.  Escalating confrontations instead of accommodating his needs.

67.  Murphy's confrontation of M.A. in November 2022, including aggressive verbal escalation and invasion of personal space, constituted discrimination based on M.A.'s disability.

68.  Dr. Bub and WASD, after receiving notice of Murphy's acts or omissions, failed to take corrective action, retrain staff, or ensure compliance with disability protections.

69.     WASD actions and omissions were taken with deliberate indifference to M.A.'s federally protected rights.

70.     As a direct and proximate result, M.A. suffered emotional harm, loss of educational access, and deterioration of his mental health.

### COUNT II
### Violation of Section 504 of the Rehabilitation Act
### (29 U.S.C. § 794)
### (Against WASD)

71.     Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

72.     WASD receives federal financial assistance.

73.     M.A. was a qualified individual with a disability.

74.     WASD, through their acts or omissions, excluded M.A. from participation in and denied him the benefits of educational services by reason of his disability.

75.     WASD, through their acts or omissions, discriminated against M.A. by:

   a.   Punishing conduct directly related to his disability;

   b.   Failing to implement required accommodations; and

   c.   Creating an environment where his disability-related needs were treated as violations.

76.     Following the November 2022 incident, WASD was on notice that M.A. was being harmed through discriminatory treatment.

77.     Despite such notice, WASD's acts or failure to act, demonstrates deliberate indifference.

78.     This discrimination caused M.A. severe emotional distress and contributed to his psychological decline and, ultimately, to his death.

**PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL**          Page **9** of **14**

**COUNT III**
**Violation of the Individuals with Disabilities Education Act**
**(20 U.S.C. § 1400 *et. seq.*)**
**(Against WASD)**

79.     Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

80.     M.A. was entitled to a Free Appropriate Public Education ("FAPE") under the IDEA.

81.     Defendants, through their acts or omissions, failed to provide a FAPE by:

   a.   Failing to implement M.A.'s IEP;

   b.   Disciplining him for conduct protected by his accommodations;

   c.   Failing to adjust educational supports in response to known distress.

82.     Defendants' conduct deprived M.A. of meaningful educational benefit.

83.     Exhaustion of administrative remedies is excused because:

   a.   The violations are systemic in nature;

   b.   The relief sought includes damages not available through administrative proceedings;

   c.   The harm culminated in M.A.'s death, rendering administrative remedies inadequate.

**<u>COUNT IV</u>**
**State-Created Danger**
**(42 U.S.C. § 1983)**
**(Against Dr. Bub and Murphy)**

84.     Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

85.     Dr. Bub and Murphy acted under color of state law.

86.    Dr. Bub and Murphy affirmatively created and increased the danger to M.A. by:

    a.   Escalating confrontations instead of de-escalating;

    b.   Punishing disability-related behavior; and

    c.   Failing to intervene after receiving notice of harm.

87.    Murphy's conduct in November 2022 placed M.A. in a position of humiliation, fear, and emotional distress.

88.    Dr. Bub, after being notified, failed to take corrective action to prevent further harm.

89.    M.A. was a foreseeable and identifiable victim.

90.    Dr. Bub and Murphy knew or should have known that their conduct posed a substantial risk of serious harm to a vulnerable student with autism and ADHD.

91.    Dr. Bub and Murphy acted with deliberate indifference to that risk.

92.    Dr. Bub and Murphy's conduct was a direct and proximate cause of M.A.'s emotional deterioration and death.

## COUNT V
**Wrongful Death**
**(Idaho Code § 5-311)**
**(Against WASD)**

93.    Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

94.    WASD owed M.A. a duty to provide a safe educational environment and to comply with disability protections.

95.    WASD breached that duty by:

    a.   Failing to accommodate M.A.'s disabilities;

    b.   Subjecting him to improper discipline;

c.  Ignoring known risks to his mental health.

96.  WASD's conduct created a continuous chain of events leading to M.A.'s death.

97.  M.A.'s suicide was a foreseeable result of WASD's actions and omissions.

98.  Plaintiffs, as statutory beneficiaries, have suffered damages including, but not limited to, loss of companionship and emotional distress.

## COUNT VI
### Negligence
### (Against WASD)

99.  Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

100.  WASD owed a duty of reasonable care to M.A.

101.  WASD breached that duty by:

a.  Failing to implement accommodations;

b.  Escalating interactions with a vulnerable student;

c.  Failing to respond to known complaints.

102.  WASD's breach was a proximate cause of M.A.'s harm and death.

## COUNT VII
### Negligence Infliction of Emotional Distress (by Bystander)
### (Against all Defendants)

103.  Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

104.  M.A.'s mother directly witnessed the November 2022 confrontation via FaceTime.

105.  She observed Murphy's conduct and M.A.'s distress in real time.

106.  Defendants' conduct foreseeably caused severe emotional distress to Plaintiffs.

107.  Plaintiffs have suffered ongoing psychological harm as a result.

## COUNT VIII
### Loss of Familial Relationship
### (Against all Defendants)

108.    Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

109.    As a direct result of Defendants' conduct, Plaintiffs have lost M.A.'s companionship, care, and familial relationship.

110.    This loss is permanent and has caused significant emotional harm.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request the following relief:

1.    For all economic and non-economic damages suffered by Plaintiffs, including but not limited to, emotional distress, mental anguish, loss of enjoyment of life, loss of companionship and familial relationship, loss of support and society.

2.    For all damages recoverable under Idaho law for wrongful death, including damages suffered by statutory beneficiaries.

3.    For compensatory damages arising from violations of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and 42 U.S.C. § 1983.

4.    For a declaration that Defendants' conduct:

    a.    Violated M.A.'s rights under federal disability law;

    b.    Violated his constitutional rights under the Fourteenth Amendment;

    c.    Constituted unlawful discrimination on the basis of disability.

5.    For a declaration that, as applied in this case:

    a.    Idaho Code § 6-906 does not bar Plaintiffs' claims; and/or

    b.  The strict 180-day notice requirement is unconstitutional as applied to minor beneficiaries and wrongful death claims.

6.     For injunctive relief requiring WASD to:

    a.  Implement and enforce policies ensuring compliance with IEP accommodations for students with disabilities;

    b.  Provide mandatory training to teachers and administrators regarding:

       i.  Disability accommodations;

      ii.  De-escalation techniques;

    iii.  Interaction with students with autism and ADHD;

    c.  Establish procedures for documenting and responding to disciplinary actions involving students with disabilities;

    d.  Implement oversight mechanisms to ensure complaints by parents are:

       i.  Investigated;

      ii.  Documented;

    iii.  Resolved with corrective action where appropriate;

    e.  Maintain accurate and complete disciplinary records for students.

7.     An award of Plaintiff's costs, expenses and reasonable attorney's fees pursuant to 42 U.S.C. § 1988, the Americans with Disabilities Act, Section 504.

8.     For pre-judgment and post-judgment interest at the highest rate permitted by law; and

9.     For any and all further relief the Court deems just and equitable;

DATED this 4th day of May 2026.        **WILLIAMS LAW GROUP, PLLC**
        /s/ Max T. Williams
        Max T. Williams, ISB No. 11015
        *Attorney for Plaintiffs*